UNITED STATES DISTRICT COURT FOR THE
SOUTHERN DISTRICT OF NEW YORK

------------------------------------------------------------------x
DUNKIN' DONUTS FRANCHISED :
  RESTAURANTS LLC, :
  a Delaware Limited Liability Company, :
DUNKIN' DONUTS FRANCHISING LLC, :
  a Delaware Limited Liability Company, :
DD IP HOLDER LLC, :
  a Delaware Limited Liability Company, :
BASKIN-ROBBINS FRANCHISED SHOPS LLC, :
  a Delaware Limited Liability Company, :
                              Plaintiffs, :
                              v. : C.A. No. 7:08-cv-00209-CLB
 :
HUDSON VALLEY DONUTS, INC., :
  a New York Corporation, :
DONUTS OF BEACON, INC., :
  a New York Corporation, :
DONUTS OF EAST FISHKILL, LLC, :
  a New York Limited Liability Company :
DONUTS OF ROUTE 9, LLC, :
  a New York Limited Liability Company :
DONUTS OF FISHKILL, LLC, :
  a New York Limited Liability Company, :
DONUTS OF ROUTE 52, LLC, :
  a New York Limited Liability Company, :
JOSEPH DEANGELIS, :
  a resident of New York, :
NICHOLAS PALOMBA, :
  a resident of New York, :
                              Defendants. :
------------------------------------------------------------------x

## **AMENDED COMPLAINT**

      This is an action for breach of contract, trademark infringement, trade dress infringement, and unfair competition arising from, among other things, Defendants' failure to comply with the "obey all laws" provisions in their Franchise Agreements based on their failure to pay overtime wages to their employees, failing to pay all payroll taxes due, and filing false tax returns.

Plaintiffs seek monetary, injunctive, and other relief against Defendants for the reasons set forth below.

## PARTIES

1.    Plaintiff Dunkin' Donuts Franchised Restaurants LLC, successor-in-interest to Dunkin' Donuts LLC and Dunkin' Donuts Incorporated, is a Delaware limited liability company with its principal place of business at 130 Royall Street, Canton, Massachusetts.  All Dunkin' Donuts Franchise Agreements dated prior to May 26, 2006 have been assigned to Dunkin' Donuts Franchised Restaurants LLC.  It is engaged in the business of franchising independent businesspersons to operate Dunkin' Donuts shops throughout the United States.  Dunkin' Donuts franchisees are licensed to use the trade names, service marks, and trademarks of Dunkin' Donuts and to operate under the Dunkin' Donuts System, which involves the production, merchandising, and sale of donuts and related products utilizing a specially designed building with special equipment, equipment layouts, interior and exterior accessories, identification schemes, products, management programs, standards, specifications, proprietary marks and identification.

2.    Plaintiff Dunkin' Donuts Franchising LLC is a Delaware limited liability company with its principal place of business at 130 Royall Street, Canton, Massachusetts.  All Dunkin' Donuts Franchise Agreements dated on or after May 26, 2006 are in the name of Dunkin' Donuts Franchising LLC.  It is engaged in the business of franchising independent businesspersons to operate Dunkin' Donuts shops throughout the United States.  Dunkin' Donuts franchisees are licensed to use the trade names, service marks, and trademarks of Dunkin' Donuts and to operate under the Dunkin' Donuts system, which involves the production, merchandising, and sale of donuts and related products utilizing a specially designed building

with special equipment, equipment layouts, interior and exterior accessories, identification schemes, products, management programs, standards, specifications, proprietary marks and identification.

3. Plaintiff DD IP Holder LLC, successor-in-interest to Dunkin' Donuts USA, Inc., is a Delaware limited liability company with its principal place of business at 130 Royall Street, Canton, Massachusetts. DD IP Holder LLC is the owner of the trademark, service mark, and trade name "Dunkin' Donuts," and related marks. Unless otherwise specified, Dunkin' Donuts Franchised Restaurants LLC, Dunkin' Donuts Franchising LLC, and DD IP Holder LLC are collectively referred to hereinafter as "Dunkin'" or "Dunkin' Donuts." Unless otherwise specified, Dunkin' Donuts Franchised Restaurants LLC and DD IP Holder LLC are collectively referred to hereinafter as "Dunkin'" or "Dunkin' Donuts."

4. Plaintiff Baskin-Robbins Franchised Shops LLC, successor-in-interest to Baskin-Robbins USA LLC and Baskin-Robbins USA, Co., is a Delaware limited liability company with its principal place of business at 130 Royall Street, Canton, Massachusetts. All Baskin-Robbins Franchise Agreements dated prior to May 26, 2006 have been assigned to Baskin-Robbins Franchised Shops LLC. Baskin-Robbins is authorized to use the trademarks, service marks and trade names owned by BR IP Holder LLC and to sublicense Baskin-Robbins franchisees, as independent businesspersons, to use these marks and trade names. Baskin-Robbins franchisees are licensed to use the Baskin-Robbins trade names, service marks, and trademarks and to operate under the Baskin-Robbins system, which involves the production, merchandising, and sale of ice cream and related products utilizing special equipment, equipment layouts, interior and exterior accessories, identification schemes, products, management programs, standards, specifications, proprietary marks, and information.

5.     Dunkin' and Baskin operate as separate corporations. However, they pursue or permit joint development of units in selected markets, which are commonly referred to as "combo" shops.

6.     Defendant Hudson Valley Donuts, Inc. ("Hudson Valley Donuts") is a New York corporation and, upon information and belief, its principal place of business is in Hopewell Junction, New York. Defendant Hudson Valley Donuts was the owner of a Dunkin' Donuts shop located at 807 State Route 82, Hopewell Junction, New York, pursuant to a Franchise Agreement dated January 30, 2004.

7.     Defendant Donuts of Beacon, Inc. ("Donuts of Beacon") is a New York corporation and, upon information and belief, its principal place of business is in Beacon, New York. Defendant Donuts of Beacon was the owner of a Dunkin' Donuts shop located at 388 Fishkill Avenue, Beacon, New York pursuant to a Franchise Agreement dated January 30, 2004.

8.     Defendant Donuts of East Fishkill, LLC ("Donuts of East Fishkill") is a New York limited liability company, upon information and belief, its principal place of business is in Hopewell Junction, New York. Defendant Donuts of East Fishkill was the owner of a Dunkin' Donuts shop located at 1495 State Route 52, Hopewell Junction, New York, pursuant to a Franchise Agreement dated March 7, 2003.

9.     Defendant Donuts of Route 9, LLC ("Donuts of Route 9") is a New York limited liability company and, upon information and belief, its principal place of business is in Fishkill, New York. Defendant Donuts of Route 9 was the owner of a Dunkin' Donuts shop located at 747 Route 9 South, Fishkill, New York, pursuant to a Franchise Agreement dated June 14, 2000.

10.    Defendant Donuts of Fishkill, LLC ("Donuts of Fishkill") is a New York limited liability company and, upon information and belief, its principal place of business is in Fishkill,

4

New York.  Defendant Donuts of Fishkill was the owner of a Dunkin' Donuts shop located at 680 Route 9, Fishkill, New York, pursuant to a Franchise Agreement dated December 18, 2006.

11.     Defendant Donuts of Route 52, LLC ("Donuts of Route 52") is a New York limited liability company and, upon information and belief, its principal place of business is in Hopewell Junction, New York.  Defendant Donuts of Fishkill was the owner of a Dunkin' Donuts shop located at 2953 Route 52, Hopewell Junction, New York, pursuant to a Franchise Agreement dated November 10, 2006.

12.     Defendant Joseph DeAngelis is a natural person and a citizen and resident of the State of New York.  Defendant Joseph DeAngelis is an officer, member, and/or shareholder of Hudson Valley Donuts, Inc.; Donuts of Beacon, Inc.; Donuts of East Fishkill, LLC; Donuts of Route 9, LLC; Donuts of Fishkill, LLC; and Donuts of Route 52, LLC and personally guaranteed the obligations of the aforementioned entities pursuant to executed personal guarantees.

13.     Defendant Nicholas Palomba is a natural person and a citizen and resident of the State of New York.  Defendant Nicholas Palomba is an officer, member, and/or shareholder of Hudson Valley Donuts, Inc.; Donuts of Beacon, Inc.; Donuts of East Fishkill, LLC; Donuts of Route 9, LLC; Donuts of Fishkill, LLC; and Donuts of Route 52, LLC and personally guaranteed the obligations of the aforementioned entities pursuant to executed personal guarantees.

## JURISDICTION AND VENUE

14.     This Court has jurisdiction pursuant to §§ 34(a) and 39 of the Lanham Act, 15 U.S.C. §§ 1116 (a) & 1121, and 28 U.S.C. §§ 1331, 1332(a), 1338, & 1367(a).  The amount in controversy exceeds $75,000, exclusive of interest and costs.

15.     This Court has *in personam* jurisdiction over Defendants because they conduct business in this District and the events giving rise to Plaintiffs' claims occurred in this district.

16. Venue is proper in this district pursuant to 28 U.S.C. § 1391(b).

## BACKGROUND FACTS
### The Dunkin' Donuts System

17. Dunkin' is the franchisor of the Dunkin' Donuts franchise system.

18. DD IP Holder LLC is the owner of the trademark, service mark, and trade name "Dunkin' Donuts," and related marks. Dunkin' Donuts Franchised Restaurants LLC has the exclusive license to use and license others to use these marks and trade name and has used them continuously since approximately 1960 to identify its doughnut shops, and the doughnuts, pastries, coffee, and other products associated with those shops.

19. The Dunkin' Donuts trademarks and trade name are distinctive and famous and have acquired secondary meaning.

20. The Dunkin' Donuts trademarks and trade name are utilized in interstate commerce.

21. The Dunkin' Donuts marks have been very widely advertised and promoted by Dunkin' Donuts over the years. Dunkin' Donuts and its franchisees have expended approximately $1,500,000,000 in advertising and promoting the Dunkin' Donuts marks over the last thirty-six years. Dunkin' Donuts spent approximately $167,000,000 in fiscal year 2005 alone on advertising and promotion.

22. Dunkin' Donuts and its franchisees currently operate approximately 5,600 shops in the United States and 2,000 shops outside of the United States. Dunkin' Donuts shops feature Dunkin' Donuts' distinctive trade dress, including the pink and orange color scheme, and the frankfurter lettering style. In the more than fifty years since the Dunkin' Donuts system began, millions of consumers have been served in Dunkin' Donuts shops.

23. As a result of the extensive sales, advertising, and promotion of items identified by the Dunkin' Donuts marks, the public has come to know and recognize the Dunkin' Donuts marks, and to associate them exclusively with products and services offered by Dunkin' Donuts and its franchisees. The Dunkin' Donuts marks are among the best and most widely known trademarks in the United States today, and are assets of inestimable value to Dunkin' Donuts, representing and embodying Dunkin' Donuts' considerable goodwill and favorable reputation.

### Defendants' Obligations Under the Franchise Agreements

24. Under the terms of the Franchise Agreements, Defendants agreed they would use Dunkin' Donuts' proprietary marks, including, but not limited to, its trademarks, logos, emblems, trade dress and other indicia of origin, "only in the manner and to the extent specifically licensed" by the agreement. Franchise Agreement §§ 7.0 and 7.1.

25. Defendants agreed that any unauthorized use of the Dunkin' proprietary marks during or after the expiration or earlier termination of the agreement would constitute an incurable default causing irreparable harm subject to injunctive relief. Franchise Agreement §§ 7.1, 9.4.2 and 9.4.3.

26. Defendants agreed that they would comply with all applicable laws, rules, regulations, ordinances, and orders of public authorities. Franchise Agreement § 5.1.7.

27. Defendants also agreed not to use the franchised premises for any illegal or unauthorized purpose. Franchise Agreement § 9.0.3.

28. Defendants agreed that it would be a default under the Franchise Agreements if they were convicted of or plead guilty or "nolo contendere" to a felony, crime involving moral turpitude, or any other crime or offense that Plaintiffs believed is injurious to Plaintiffs' systems,

7

proprietary marks or the goodwill associated therewith, or if Plaintiffs had proof that Defendants had committed such a felony, crime or offense. Franchise Agreement § 9.0.2.

29. Defendants agreed they would not do or perform, directly or indirectly, any act injurious or prejudicial to the goodwill associated with Dunkin' Donuts' proprietary marks and the Dunkin' Donuts systems. Franchise Agreement § 8.0.1.

30. Defendants agreed to keep full, complete, and accurate books and records in accordance with generally accepted accounting principles and in a form and manner as may be prescribed by Plaintiffs. Franchise Agreement § 5.2.

31. The Franchise Agreements each contain a "cross-default" provision, which states in Sections 9.0 and 9.0.4 that "Franchisee shall be in default under this Agreement . . . [i]f any other franchise agreement between FRANCHISEE and FRANCHISOR or any affiliated entity is terminated by reason of FRANCHISEE's default thereunder . . . ." Franchise Agreement §§ 9.0 and 9.0.4.

32. Thus, the termination of one Franchise Agreement constitutes grounds for the termination of all the Franchise Agreements, and each of them individually.

33. Under Section 9.1.4 of the Franchise Agreements, no cure period is available if Defendants are in default under any section designated in 9.0.1 through 9.0.4 or if they otherwise commit an act of fraud with respect to their obligations under the Agreement. Moreover, as a matter of law, no cure period is available for such defaults.

34. Defendants agreed that, upon the termination of the Franchise Agreements, their rights to use Plaintiffs' proprietary marks and system would cease, and that they would promptly pay Plaintiffs any damages, costs, and expenses, including reasonable attorneys' fees, incurred

by Plaintiffs as a result of the Defendants' default(s). Franchise Agreement §§ 9.3, 9.4, 9.4.1 and 9.4.2.

35.     Defendants agreed that any unauthorized use of Dunkin' Donuts' proprietary marks following the effective date of the termination of the Franchise Agreements would result in irreparable harm to Dunkin' Donuts and would constitute willful trademark infringement. Franchise Agreement § 9.4.3.

### The Multiple Unit Store Development Agreements

36.     On June 4, 2003, Defendant Nicholas Palomba signed a Multiple Unit Store Development Agreement ("SDA") to develop combination Dunkin' Donuts/Baskin-Robbins units within designated areas in the Metro New York area. The SDA was amended on May 31, 2006. Under the SDA, Defendant Nicholas Palomba agreed that his right to develop the franchises was contingent upon his not being in default of the SDA or any Franchise Agreements he may have with Plaintiffs. By engaging in the breaches of the Franchise Agreements as noted herein, Defendant breached the SDA.

37.     On June 7, 2007, Defendants Nicholas Palomba and Joseph DeAngelis signed a Multiple Unit Store Development Agreement ("SDA") to develop a Dunkin' Donuts unit within a designated area in Salt Point, New York. Under the SDA, Defendants agreed that their right to develop the franchise was contingent upon their not being in default of the SDA or any Franchise Agreements they may have with Plaintiffs. By engaging in the breaches of the Franchise Agreements as noted herein, Defendants breached the SDA.

### DEFENDANTS' DEFAULTS

38.     Plaintiffs recently discovered that Defendants breached their agreements by the conduct described below.

39. On information and belief, Defendants have failed to pay numerous employees at overtime wage rates due for work in excess of 40 hours per week in the shops.

40. On information and belief, Defendants have participated in a scheme to avoid paying federal and state payroll taxes due and owing to the IRS and the New York State Department of Taxation and Finance in violation of employee income tax withholding laws and regulations.

41. Based on the foregoing, and pursuant to the applicable provisions of the Franchise Agreements, Plaintiffs sent to Defendants a Notice of Default and Termination, terminating the aforementioned agreements effective immediately upon Defendants' receipt of the Notice, stating the grounds for termination, and demanding that Defendants immediately comply with their post-termination obligations as set forth in the agreements.

42. Based on the foregoing, and pursuant to the applicable provisions of the Franchise Agreements and SDAs, Plaintiffs sent to Defendants a Supplemental Notice of Default and Termination, terminating the aforementioned agreements effective immediately upon Defendants' receipt of the Notice, stating the grounds for termination, and demanding that Defendants immediately comply with their post-termination obligations as set forth in the agreements

**COUNT I**
**(Breach of Contract – Franchise Agreements)**

43. The allegations of paragraphs 1 through 42 are hereby incorporated by reference.

44. The conduct described herein constitutes breaches of the contractual obligations and agreements contained in the Franchise Agreements.

45. These breaches constitute grounds for terminating the agreements.

46. As a result of Defendants' actions, Dunkin' has suffered and is continuing to suffer irreparable injury, and has incurred and is continuing to incur monetary damage in an amount that has yet to be determined.

## COUNT II
### (Breach of Contract – SDAs)

47. The allegations of paragraphs 1 through 46 are hereby incorporated by reference.

48. The conduct described herein constitutes breaches of the contractual obligations and agreements contained in the SDAs.

49. These breaches constitute grounds for terminating the SDAs.

50. As a result of Defendants' actions, Dunkin' and Baskin-Robbins have suffered and are continuing to suffer irreparable injury, and have incurred and are continuing to incur monetary damage in an amount that has yet to be determined.

## COUNT III
### (Trademark Infringement)

51. The allegations of paragraphs 1 through 50 are hereby incorporated by reference.

52. The use in commerce of the Dunkin' trademarks and trade names by Defendants outside the scope of the Franchise Agreements and without Dunkin's consent is likely to confuse or deceive the public into believing, contrary to fact, that the unauthorized activities of Defendants are licensed, franchised, sponsored, authorized, or otherwise approved by Dunkin'. Such unauthorized use of Dunkin's trademarks and trade names infringes Dunkin's exclusive rights in their trademarks under § 32 of the Lanham Act, 15 U.S.C. § 1114, and applicable state law.

53. The acts of Defendants were and are being done knowingly and intentionally to cause confusion, or to cause mistake, or to deceive.

54. As a result of the actions of Defendants, Dunkin' has suffered and is continuing to suffer irreparable injury, and has incurred and is continuing to incur monetary damage in an amount that has yet to be determined.

## COUNT IV
### (Unfair Competition)

55. The allegations of paragraphs 1 through 54 are hereby incorporated by reference.

56. The use in commerce of Dunkin's trademarks and trade names by Defendants outside the scope of the Franchise Agreements and without the consent of Dunkin' is likely to cause confusion, or to cause mistake, or to deceive as to the origin, sponsorship, or approval of their goods, services, or commercial activities by another person.  Such unauthorized use of Dunkin's trademarks and trade names violates § 43 of the Lanham Act, 15 U.S.C. § 1125(a), and applicable state law.

57. The acts of Defendants were and are being done knowingly and intentionally to cause confusion, or to cause mistake, or to deceive.

58. As a result of the actions of Defendants, Dunkin' has suffered and is continuing to suffer irreparable injury, and has incurred and is continuing to incur monetary damage in an amount that has yet to be determined.

## COUNT VI
### (Trade Dress Infringement)

59. The allegations of paragraphs 1 through 58 are hereby incorporated by reference.

60. Defendants' shops are identified by signs, exterior appearance, packaging, containers, and other items on which the words "Dunkin' Donuts" appear in the same lettering style and in the same distinctive color scheme as Dunkin' Donuts uses for the doughnut shops operated by Dunkin' Donuts licensees.

61.     The use by Defendants of trade dress that is identical to the Dunkin' Donuts trade dress outside the scope of the Franchise Agreements constitutes a false designation of the origin of Defendants' shops, which is likely to cause confusion, or to cause mistake, or to deceive the public as to the affiliation, connection, or association of their shops with the Dunkin' Donuts shops operated by Dunkin' Donuts licensees.  Such adoption of Dunkin' Donuts trade dress violates § 43 of the Lanham Act, 15 U.S.C. § 1125, and the common law.

62.     The acts of Defendants were and are being done knowingly and intentionally to cause confusion, or to cause mistake, or to deceive.

63.     As a result of the actions of Defendants, Dunkin' has suffered and is continuing to suffer irreparable injury, and has incurred and is continuing to incur monetary damage in an amount that has yet to be determined.

## Prayer for Relief

WHEREFORE, Plaintiffs pray that this Court:

a.      Enter a declaratory judgment order stating that the conduct of Defendants violated the terms of the Franchise Agreements and SDAs and constitutes grounds for terminating the Franchise Agreements and SDAs;

b.      Enter a judgment in favor of Plaintiffs for the damages incurred by them as a result of the breaches of the Franchise Agreements and SDAs by Defendants;

c.      Enter an injunctive order ratifying and enforcing the termination of the Franchise Agreements and SDAs as of the effective date of the Notices of Termination, or as otherwise provided by applicable law;

      d.      Enjoin Defendants and all those acting in concert with them from infringing upon Dunkin's trademarks, trade dress, and trade names and from otherwise engaging in unfair competition with Dunkin';

      e.      Enter an injunctive order directing Defendants to comply with their post-termination obligations under any contract with Plaintiffs, including but not limited to the Franchise Agreements, SDAs, Lease Riders, and Lease Option Agreements;

      f.      Award Plaintiffs judgment against Defendants for the damages they have sustained and the profits Defendants have derived as a result of their actions, and that such damages be assessed in a separate accounting procedure and trebled in accordance with § 35 of the Lanham Act, 15 U.S.C. § 1117;

      g.      Award Plaintiffs prejudgment interest in accordance with § 35 of the Lanham Act, 15 U.S.C. § 1117;

      h.      Award Plaintiffs such exemplary or punitive damages as are deemed appropriate because of the willful, intentional, and malicious nature of the conduct of Defendants;

      i.      Award Plaintiffs their costs and attorneys' fees incurred in connection with this action pursuant to the contract and § 35 of the Lanham Act, 15 U.S.C. § 1117; and

      j.      Award Plaintiffs such other relief as this Court may deem just and proper.

                  Respectfully submitted,

                  /s/ Ronald D. Degen_____
                  Ronald D. Degen (RD 7808)
                  Scott Goldfinger (SC 9219)
                  O'ROURKE & DEGEN, PLLC
                  225 Broadway, Suite 715
                  New York, NY 10007
                  Telephone: (212) 227-4530
                  Facsimile: (212) 385-9813

                    Robert L. Zisk (RZ 1275)  
                    Jeffrey L. Karlin (JK 7381)  
                    Katherine L. Wallman (KW 3966)  
                    GRAY, PLANT, MOOTY, MOOTY  
                       & BENNETT, P.A.  
                    2600 Virginia Avenue, N.W.  Suite 1111  
                    Washington, D.C. 20037  
                    Telephone:     (202) 295-2200  
                    Facsimile:      (202) 295-2250  

                    *Attorneys for Plaintiffs*

Dated:  February 7, 2008

UNITED STATES DISTRICT COURT
SOUTHERN DISTRICT OF NEW YORK
---------------------------------------------------------------x
DUNKIN' DONUTS FRANCHISED            :
  RESTAURANTS LLC, et al.,           :
                                                                   :
                          Plaintiffs,   :
                                                                   :
                             v.         :    C.A. No. 08-CV-00209 (CLB)
                                                                     :
HUDSON VALLEY DONUTS, INC., et al.,   :
                                                                     :
                        Defendants.   :
---------------------------------------------------------------x

## CERTIFICATE OF SERVICE

      I hereby certify, under penalty perjury, that on February 7, 2008 I served a copy of the First Amended Complaint by first class mail in a post paid wrapper addressed to each of the following:

Mark Leadlove, Esq.
Bryan Cave LLP
One Metropolitan Square
211 North Broadway, Suite 3600
St. Louis, Missouri 63102

Neil S. Cartusciello, Esq.
Law Offices of Neil S. Cartusciello
470 Park Avenue South – Suite 4N
New York, New York 10016

Dated: February 7, 2008

                                                /s/ Ronald D. Degen_____
                                                **RONALD D. DEGEN** (RD 7808)